

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

| | | |
|---|---|---|
| *Charles Austin*<br>*Assistant United States Attorney*<br>*Charles.Austin@usdoj.gov* | *Suite 400*<br>*36 S. Charles Street*<br>*Baltimore, MD 21201-3119* | *DIRECT: 410-209-4989*<br>*MAIN: 410-209-4800*<br>*FAX: 410-962-0717* |

May 17, 2021

The Honorable Richard D. Bennett
United States District Judge
U.S. Courthouse
101 W. Lombard Street
Baltimore, Maryland 21201

      Re:   *United States v. Jessie Walton, Jr.*
              Crim. No. RDB-19-0506

Dear Judge Bennett:

      The government submits this memorandum in anticipation of the May 20, 2021 sentencing in the above-captioned case. The government recommends a sentence of no greater than 40 months. The parties appear to dispute few, if any, facts relevant to the Court's consideration. The differences in recommendation arise primarily, if not completely, from differing perspectives regarding the weight afforded to those agreed facts. Regardless, the government submits that a below guidelines sentences is warranted here.

## INTRODUCTION AND PROCEDURAL HISTORY

      On October 24, 2019, a federal grand jury in the District of Maryland returned an indictment charging Jessie Walton, Jr. and four other individuals with two Hobbs Act violations: Conspiracy to Interfere with Commerce by Robbery (Count One) and Interference with Commerce by Robbery (Count Two), in violation of 18 U.S.C. § 1951(a). ECF No. 1. On November 7, 2019, the grand jury returned a superseding indictment adding a sixth individual to the substantive robbery charge. ECF No. 8.[1] On February 11, 2021, Mr. Walton pleaded guilty to Count Two of the First Superseding Indictment, Interference with Commerce by Robbery. ECF 139.

## SENTENCING PROCEDURE

      In *Gall v. United States*, 552 U.S. 38 (2007), the Supreme Court set forth a multi-step process for imposing sentence in a criminal case. *Id*. at 51-52. A sentencing court should begin by correctly calculating the applicable guidelines range. *Id*. at 49. After providing the parties with

---

[1] In July 2020, the grand jury returned a second superseding indictment, which added a seventh defendant to the Hobbs Act counts and charged two of Mr. Walton's co-defendants with firearms violations under 18 U.S.C. § 924(c).

an opportunity to present argument, the district court should then consider the factors set forth in 18 U.S.C. § 3553(a).  *Id*. at 49-50.

## FACTUAL BACKGROUND

As stipulated in the plea agreement, Mr. Walton and six other individuals participated in an armed home invasion that involved physically restraining one victim and physically assaulting an eight-month pregnant woman, all in front of the victims' seven-year-old child.  Mr. Walton and his accomplices met at Wal-Mart parking lot in Abingdon, Maryland.  At that parking lot, the group consolidated from three to two vehicles—one driven by Mr. Walton—and drove almost one hour to the victims' residence in Cecil County, Maryland.  After Mr. Walton and the other driver parked at a school near the victims' apartment, five individuals exited the vehicles.

While Mr. Walton remained in his vehicle, his co-defendants forced entry, brandished firearms, and assaulted both adults in the presence of their seven-year-old child.  The female adult victim, approximately eight months pregnant, found herself staring down the barrel of a firearm before being kicked in her abdomen.  The group fled the apartment after a take far below their expectations.  Mr. Walton returned his passengers to Harford County.  He was arrested less than three months later by the Maryland State Police and remained in state custody until being transferred to federal custody in November 2019.

## SENTENCING GUIDELINES CALCULATION

The government agrees with the guidelines calculations set forth in the presentence investigation report ("PSIR").  As stipulated in the plea agreement, Mr. Walton's base offense level is 20, pursuant to United States Sentencing Guideline ("U.S.S.G.") 2B3.1(a).  PSIR at ¶ 18, ECF 151.  Certain conduct and circumstances support the application of various enhancements to the offense level.  PSIR at ¶¶ 19-22.

Notwithstanding the resolution of the adjustment disputes raised by Mr. Walton, the government agrees that the offense should be adjusted down three levels for acceptance of responsibility pursuant to U.S.S.G. §§ 3E1.1(a), 3E1.1(b).  PSIR ¶¶ 28-29.

<u>The disputed injury and role adjustments</u>

As reserved in paragraphs 6(e) and 6(f) of the plea agreement, Mr. Walton argues that the bodily injury enhancement should be no greater than three levels and that the mitigating role adjustment should be four levels.  Def.'s Sentencing Mem. at 4-5.  The government agrees with the PSIR.

First, a four-level enhancement for "serious bodily injury" is appropriate.  The Guidelines define "serious bodily injury" as "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation."  U.S.S.G. 1B1.1 cmt. 1(M). As stipulated in the plea agreement, this offense involved the brandishing of firearms by two individuals, assault of the male victim with one firearm, and, pertinent to this enhancement, assault of the eight-month pregnant victim by kicking her in the abdomen, which led to her seeking medical attention and having an emergency Caesarian section shortly after the robbery.  The need

for such immediate and significant medical attention satisfies the Guidelines definition of "serious bodily injury."

The foreseeability argument raises a slightly closer question but one that the Guidelines appears to anticipate and answer. *See* Def.'s Sentencing Mem. at 4 (arguing that "the conduct was outside the scope of the offense as anticipated by him"). Conduct relevant to guidelines determinations includes acts and omissions of others during the offense that are "within the scope of the jointly undertaken criminal activity, in furtherance of that criminal activity, and reasonably foreseeable in connection with that criminal activity." U.S.S.G. § 1B1.3(a)(1)(B). In providing an example, the Guidelines commentary explains that a getaway driver in an armed bank robbery is accountable for an assault on and injury to a bank teller because that injury "was reasonably foreseeable in connection with that criminal activity (given the nature of the offense)." U.S.S.G. § 1B1.3 cmt. 4(B); *see also United States v. Fitzwater*, 896 F.2d 1009, 1012 (6th Cir. 1990) (upholding bodily injury enhancement applied to getaway driver in a bank robbery conspiracy where bank teller was injured; "it is reasonably foreseeable that participation in concerted criminal conduct to [commit robbery] rob a bank might result in the infliction of" injury). The government recognizes that Mr. Walton was neither personally involved in nor in the immediate presence of the assault. That is a consideration under 18 U.S.C. § 3553(a), as noted below.

Second, the government agrees with the PSIR calculation of the reduction pursuant to U.S.S.G. § 3B1.2 ("mitigating role"). The Guidelines Manual provides a mitigating role adjustment to a "substantially less culpable than average participant in the criminal activity." U.S.S.G. § 3B1.2 cmt. 3(A). No less than five considerations are relevant here, perhaps the most relevant being Mr. Walton's understanding of the scope and structure and the nature and extent of his participation. U.S.S.G. § 3B1.2 cmt. 3(C). There is no material dispute as to Mr. Walton's role in the offense, nor is there any dispute that he was not an organizer, planner, or decision-maker. While Mr. Walton may not have fully known all participants or appreciated the intricate details of the robbery plan, the stipulated facts indicate his participation in the offense—an important role given the distance traveled—and suggest at least general awareness of a plan to use a showing of force against others.

For these reasons, the government agrees with the PSIR's Guidelines calculations.

<u>The applicable Guidelines range</u>

The government will address at sentencing the final Guidelines range after the Court's resolution of the issues raised by the defense memorandum. As noted above, the government agrees with the PSIR calculations. Mr. Walton's criminal history category is I. The applicable guidelines range based on the PSIR calculations is 63 to 78 months.

**FACTORS SET FORTH IN 18 U.S.C. § 3553(A)**

Based on the 18 U.S.C. § 3553(a) factors, the government recommends a below guidelines sentence, one no greater than 40 months. The Sentencing Reform Act calls for a sentence sufficient but not greater than necessary to achieve Congress' goals for sentencing. In submitting this recommendation, the government recognizes that Mr. Walton did not personally invade the victims' home or commit the more outrageous acts of the robbery, and he has a light criminal

history.  In any event, the sentence should reflect his involvement in an armed intrusion into a family's home and his specific role in that conduct.

Again, there appears to be little, if any, material dispute about what Mr. Walton did or did not do in connection with this home invasion.  The government makes this recommendation regardless of the applicable guidelines calculations.  Undersigned counsel will address these considerations more fully during the sentencing hearing.

### Nature and Circumstances of the Offense (3553(a)(1))

There is no doubt as to the seriousness of this offense.  The violation of the victims' privacy, the assault on the adults, the trauma imposed on the minor child—all reflect the horrors of armed robberies in the home, a place many look to for safety and comfort.  He played an integral role in providing transportation for half of the participants.  Without minimizing the outrageous conduct involved, it is fair to note that Mr. Walton was by no means a ringleader or strongman in this robbery.  He never left his vehicle or appeared to have a substantial financial or other incentive to steal from the victims.  Thus, this factor favors a substantial sentence, but not necessarily one high in the expected guidelines range.

### History and Characteristics of the Offender (3553(a)(1))

Mr. Walton's criminal history is brief and dated.  He is a 49-year-old man with a single criminal conviction: a twenty-year-old false/misleading information offense.  He lacked any other arrests before the summer of 2019.

As noted in the PSIR and defense sentencing memorandum, he appears to endure various and significant mental health conditions in additional to physical conditions.  These characteristics warrant consideration in fashioning a sentence appropriate for addressing not only the nature of the offense but also the likelihood of recidivism and future threats to his community.

### The Need for the Sentence to Reflect the Seriousness of the Offense, to Provide Just Punishment for the Offense, to Afford Adequate Deterrence to Criminal Conduct and to Protect the Public from Further Crimes of the Defendant (3553(a)(2))

The government's recommendation takes into consideration the seriousness of the offense, as described above; imposes punishment as called for by Congress; provides a means of deterrence given the recommended sentence far exceeds his only term of incarceration; and protects the public—including the specific victims on April 25, 2019—from any additional criminal conduct by Mr. Walton and his accomplices.

The government submits that a below guidelines sentence is appropriate in part because the guidelines enhancements arise in large part from conduct of others.  Their conduct is relevant because it was foreseeable and integral to the nature of the offense.  But the individualized sentencing analysis for Mr. Walton should remain focused on his acts, knowledge, and role.  The recommendation accounts for the severity of the offense without placing the full weight of its

scope and damage on Mr. Walton's shoulders.[2]

It remains the interest of the parties and the public that after his release, Mr. Walton avoids conduct that will bring him before the Court again. To that end, the government joins the recommendation for both mental health treatment and vocational training that would facilitate successful completion of supervised release and avoidance of being involved—whether wittingly or not—in facilitating robberies, assaults, or worse.

*     *     *

The government believes that on the facts specific to Mr. Walton, a sentence of no greater than 40 months is sufficient but not greater than necessary to achieve the goals in 18 U.S.C. § 3553(a).

I thank the Court for its consideration of this matter.

Very truly yours,

Jonathan F. Lenzner
Acting United States Attorney

_____/s/_____
Charles Austin
Assistant United States Attorney

cc: counsel of record via ECF

---

[2] This recommendation also accounts for sentencing ranges agreed to by other defendants. Most relevant, the other driver—who has a more significant criminal history than Mr. Walton—is expected to appear in open court later this month to agree to a sentence no lower than 36 months.